THE STATE OF NEBRASKA, EX REL. HENRY T. CLARK, V.
THE BOARD OF COMMISSIONERS OF DOUGLAS COUNTY
ET AL.

1. **County Bonds:** SALE OF BY COMMISSIONERS: CHANGE OF
   BID. The respondents advertised for the sale of county bonds
   under one of two plans; one plan being for their delivery on
   the first day of January, 1881, with payment for the whole
   amount to be then made; the other for their delivery and pay-
   ment of bid in installments. Among the bids received for the
   bonds was one by the relator according to the first plan, and
   one by Ezra Millard according to the second plan. Of these
   two bids, the commissioners considered that of Millard the best,
   but they permitted the relator subsequently to modify his bid
   so as to make it preferable in their estimation to Millard's, and
   thus changed, formally accepted it. *Held,* That such modifica-
   tion and acceptance were without authority of law, and void.

2. ———. While the commissioners have power to accept or reject
   such bids, they have no power to permit one to be privately
   amended so as to make it better than another, or to render it
   acceptable to them.

ORIGINAL application for mandamus.

*George W. Doane,* for the relator.

*John C. Cowin* and *E. Wakeley,* for respondents.

LAKE, J.

The answer to the alternative writ, which is fully
supported by the evidence, is, that the respondents
having advertised for the sale of the bonds in contro-
versy under one of two plans, viz.: one of the plans
being for their delivery on the first day of January,
1881, with payment for the whole amount to be then
made; and the other for their delivery and payment of
bid in installments of $25,000 on said first day of Jan-
uary, $50,000 on the first day of July following, and

$50,000 on the first day of January, 1882, received several bids, among which was one by the relator, and one by Ezra Millard, president of the Omaha National Bank, which last bid was finally accepted.

According to the relator's bid the bonds were all to be delivered and paid for on the first day of January, 1881, at a premium of three and fifty-two-one-hundredths per cent, while according to that of Millard they were deliverable in installments, as above set forth, and to be paid for when delivered, at a premium of one and one-eighth per cent on the first two installments, and one and seven-eighths per cent on the last. The bonds were to bear the same interest under both propositions from the time of delivery.

The commissioners, believing that the bid made by Millard was the best for the county, in view of the interest that would accrue on one hundred thousand dollars of the amount if the bonds should be issued all together in accordance with the relator's bid, while the money derived from their sale would necessarily be lying idle in the treasury, were about to accept it, learning which, the relator, at a private interview, proposed to and did modify his bid by offering in writing to make payment of the one hundred thousand dollars, if the commissioners preferred it, in two certificates of deposit on the First National Bank of Omaha, one for $52,760, payable July 1st, 1881, and the other for $54,260, payable January 1st, 1882. By this mode of payment the county would realize the sum of $7,020 for the use of the money by the bank as an offset to the interest which the bonds would bear.

This modified bid the commissioners considered better than Millard's, and not without some misgivings as to the propriety of so doing, they accepted it, and awarded the bonds accordingly. Shortly afterward, however, becoming satisfied that this action was ille-

gal, they formally vacated it, and awarded the bonds to Millard under his bid.

That the acceptance of the relator's bid was without authority of law, and therefore a void act, would seem to require no argument.    This bid was not in conformity with either of the proposals which the commissioners had made for the sale of the bonds.    In the notice given to the public of the proposed sale, by which bids had been invited, no mention of certificates of deposit as a medium of payment was made.    The sale, under the law by which alone it was authorized, could be made only for money, and the commissioners had no right to consider any bid proposing payment in anything else.    Besides, after the bids were submitted and opened, no material change of their terms was permissible.    The commissioners were required to act upon them in the condition they then were.    They had the power, under the law, to accept or reject a bid, but they had no power to permit its amendment privately so as to make it better than that of another bidder, or to render it acceptable to them.

If Millard's bid, which the commissioners considered the best of those regularly made, was not entirely satisfactory, or if they were desirous of ascertaining whether, by a change in the terms of sale, one materially better for the county could be obtained, the plain and only course open to them was through a new call for bids, under a new public notice of the precise terms on which the sale would be made, so that no one bidder should be given an advantage over any other.

The bid of the relator, and its acceptance by the commissioners, being without authority of law, he is not entitled to the bonds, and the peremptory mandamus is denied, and judgment will be entered accordingly.

WRIT DENIED.