[Civil No. 2097. Filed January 9, 1924.]

[221 Pac. 834.]

## SOUTHERN SURETY COMPANY, a Corporation, Appellant, v. THE CITY OF PRESCOTT, a Municipal Corporation, Appellee.

1. Municipal Corporations—Contract Held not Modified by Contractor's Bond to Property Owners.—Where, after the execution of a paving contract by a municipality, under Civ. Code 1913, paragraphs 1953–1977, a bond was given by the contractor in trust for property owners, to pay to them a certain part of the contract price in consideration of deferring commencement of work to a certain date, which was the same date fixed in the original contract for such commencement, the bond did not modify the contract with the city.

2. Municipal Corporations—Paving Contract Could not be Modified by Superintendent of Streets.—A paving contract by a city with a contractor, when finally executed and delivered under Civ. Code, 1913, paragraphs 1953–1977, could not be changed or modified by the superintendent of streets, a ministerial officer vested with no discretion, nor could he extend any exemption privilege or immunity to the contractor with or without consideration, and where he attempted to do so the transaction was a nullity.

3. Municipal Corporations—Street Improvement Proceedings must be Within Statutory Limits.—The authority vested in municipalities and their officers by Civ. Code 1913, paragraphs 1953–1977, to conduct street improvement proceedings, is strictly construed, and can only be exercised in the manner and within the limits set forth in the statute.

4. Municipal Corporations — Surety on Contractor's Bond Held not Bound by Modification of Contract.—Where plaintiff's liability on a construction contract with a municipality was that of surety, its liability was limited to that contract, and where it was not a party to an attempted modification of the contract by the giving of a bond by the contractor for certain purposes it was not bound by the bond, and mere notice of the existence of the bond, given long after its liability became fixed, did not bind plaintiff.

4.   See 21 R. C. L. 1004 et seq.

5. MUNICIPAL CORPORATIONS—SURETY PERFORMING DEFAULTING CONTRACTOR'S CONTRACT HELD ENTITLED TO BONDS ISSUED IN PAYMENT.—Where, on paving contractor's default, plaintiff surety company completed paving work in accordance with the original contract of the contractor, and the city, by resolution of the common council accepted the surety's work as a full compliance with such contract, and directed that bonds should be issued and delivered to the surety in the full amount contemplated and required by the original contract, the city by its official act acknowledged that the bonds belonged to the surety, and it could not withhold the bonds from it, on the theory that a bond, given by the contractor to property owners to which transaction surety was not a party, relieved whoever should do the work from some of the obligations of the original contract.

6. ATTORNEY AND CLIENT—AUTHORITY TO LEAVE DISPUTED PROPERTY WITH ADVERSARY HELD NOT TO IMPLY POWER TO RELINQUISH CLAIM TO IT.—Plaintiff's letter to its attorney, authorizing him to leave disputed bonds with defendant city until the dispute should be settled by a judicial determination, *held* merely to imply that the plaintiff did not expect its attorney to recover the bonds by physical force, and not to give authority by way of compromise to relinquish all claim to the bonds.

7. MUNICIPAL CORPORATIONS—REQUIREMENT AS TO LETTING CONTRACT TO LOWEST BIDDER HELD VIOLATED.—Where the bids for doing paving work were invited, made and received upon the basis of specifications containing a so-called "freezing clause," and after all other bidders had been eliminated the superintendent of streets undertook to barter with the successful bidder for the saving of the expense that would arise from enforcing such clause in consideration of the payment to property owners, by the contractor of a certain amount, without knowing whether other bidders might not have paid a greater sum to have that clause eliminated, such method, though pursued in good faith, *held* prohibited by the statute which provides that the work shall be let to the lowest bidder.

APPEAL from a judgment of the Superior Court of the County of Yavapai. John J. Sweeney, Judge. Reversed with directions to enter judgment for appellant.

5.   See 25 R. C. L. 1326.
6.   See 27 R. C. L. 908.
7.   See 19 R. C. L. 1068.
     See 6 C. J. 659; 28 Cyc. 941, 1025, 1041, 1047.

Messrs. Clark & Clark, for Appellant.

Mr. Alfred H. Gale, City Attorney, and Messrs. Anderson, Gale & Nilsson, for Appellees.

LYMAN, J.—This is an action by the Southern Surety Company, appellant, to recover from the city of Prescott, a municipality, certain paving bonds issued in payment for street improvement, which appellant, as surety, was required to perform for the protection of its contract of suretyship. The contract required the paving of a portion of Mt. Vernon Street, of the city of Prescott, by the Southwestern Contracting Company. It is dated October 23, 1919, and provided that the work of construction should commence on March 15, following. It was made pursuant to the authority given to the municipality by what is described in the contract as the "Improvement Act of 1912."

After doing a small part of the work called for by the contract, the Southwestern Contracting Company became insolvent and ceased to operate. The appellant, as surety, was notified of that fact, and in June following took up the work where the contractor had left it, and completed it November 23, 1920, to the satisfaction and acceptance of the city of Prescott, which was officially evidenced by a resolution of the common council which recites:

"That as surety for said Southwestern Contracting Company, the said Southern Surety Company did carry out, complete, and faithfully perform all the work of grading, paving, constructing curbs, gutters, and culverts on said Mt. Vernon street according to resolution No. 2 of said legislative body, the plans and specifications for said work, and in compliance with the terms and conditions of said contract of October 23rd, 1919, and it further appearing that the Southern Surety Company, as surety for and subrogated to all the assets, rights, and equities of said Southwestern Contracting Company, under the contract of October 23rd, 1919, is entitled to have and receive improve-

ment bonds for the amount of the unpaid assessments levied upon the property owners of paving district No. 1 to pay the costs and expenses of paving and improving Mt. Vernon street, as aforesaid."

The same resolution also recites that the total amount due under that contract was $82,826.96, of which $7,269.67 had already been paid by the property owners liable, leaving a balance of $75,557.29, for which the resolution says "that improvement bonds should therefor issue to the Southern Surety Company for said sum." Such improvement bonds were accordingly issued, and to the amount of $70,557.24 were delivered to the Southern Surety Company, and the balance withheld. To recover the balance is the object of this action. The case was tried to the court sitting without a jury, and judgment rendered for the defendant.

The city of Prescott bases its claim to withhold these paving bonds upon a transaction said to have taken place between the contractor, Southwestern Contracting Company, and the street superintendent of Prescott, who testified in substance that the contractor sought to have the date of the commencement of the work fixed for the spring following the making of the contract, in order that he might not be required to protect the work in its progress from frost, as the specifications upon which his and all the other bids were based required him to do, and thereby lessen the cost of construction. The superintendent of streets said he acceded to this upon the condition that the contractor should pay the sum of $4,709.20, to be distributed among the property owners who were liable for the cost of paving. This "rebate," as it is described, was not paid in cash, but secured by a bond dated December 4, 1919, signed by the contractor, as principal, and the Central Finance Company, as surety, payable to the Commercial Trust Company of Prescott, in trust for the property owners liable for the Mt. Vernon street improvement in the sum of $4,750, conditioned

upon the ''payment to the trustee therein named the sum of $4,709.20 on or before the date of issuance and delivery of the assessment warrant against the property lying in improvement district No. 1,'' being the territory liable for the payment of the Mt. Vernon Street paving. The bond recites that:

''Whereas there is included in that certain bid of the Southwestern Contracting Company for the improvement specified in resolution No. 2 of the mayor and common council of said city of Prescott, the sum of four thousand, seven hundred nine and 20/100 dollars ($4,709.20), for the purpose of protecting the work from the cold weather and frost expected to be encountered in performing and completing the work, under the specifications; and

''Whereas the superintendent of streets of the city of Prescott has fixed the fifteenth day of March, 1920, as the date for the commencement of said work, in order to avoid expending said additional amount of money incident to making such improvement in the present season.''

This transaction is evidenced by no other writing. The only consideration for this bond seems to have been, as recited in it, the fixing of the date for the commencement of the work on the 15th of March, 1920, which is identical with the date fixed for the commencement of the work in the original contract, for the performance of which this appellant is bound. It is not claimed that the appellant had knowledge of any such transaction at the time it entered into its contract of suretyship, nor at any other time prior to June, 1920, just before it undertook to complete the work which its principal had abandoned. At that time some agent of the appellant, who was making preparations to have the paving finished, was told by the superintendent of streets about this transaction, to which he made no response. The theory of the defense seems to be that this bond for $4,750 constituted a modification of the original contract, and that, because the appellant had notice of such transaction

before it began the work of completing the paving, it was therefore bound by it.

It is perfectly obvious that this transaction constituted no modification of the original contract. The original contract sets March 15th for the commencement of the work, and that was never changed. This Central Finance bond does not assume to change it, but expressly recognizes it. Furthermore, the construction contract, when finally executed and delivered, was beyond the power of anyone to change or modify it; much less could the superintendent of streets, a ministerial officer, vested with no discretion whatever in the premises, modify the contract, or extend any exemption, privilege, or immunity to the contractor, with or without consideration, Such a transaction violates every elementary rule of law which safeguards the sanctity of contracts of this character, entered into in accordance with the strict limitations of the statute by public officers exercising authority limited by the explicit provisions of statute, and having no authority in the premises not definitely conveyed by statute. The whole transaction in its inception was a complete nullity. Whether or not some-one might have become estopped, under some circumstances, from avoiding some consequences contemplated by it, is not worth while here to consider.

The contract upon which appellant is surety was made in the course of proceedings taken by the city of Prescott, as the contract itself recites, upon the authority vested in municipalities and their officers by the terms of chapter 13 of title 7 of the Civil Code of 1913. These proceedings are purely statutory. The authority vested in the public officers who conduct the proceedings is strictly construed, and it can only be exercised in the manner and within the limits set forth in the statute. *Kelso* v. *Cole,* 121 Cal. 121, 53 Pac. 353; *Skirm* v. *Board of Public Works* (N. J. Sup.), 29 Atl. 158. The appellant, not being a party

to this irregular transaction, is not bound by it by mere notice of its existence, given long after its liability became fixed. The appellant's liability is that of a surety, and such liability is limited to the contract to which it is a party. It is not bound by the bond of December 4, 1919, to which it is an entire stranger.

The assumption that the Central Finance Company bond operated to relieve the contractor or whoever did the work from some obligation involved in the original contract is wholly without foundation. The appellant did the work under the original contract, and in accordance with it, and when it was completed the city of Prescott accepted it as in full compliance with the original contract, and directed that bonds should be issued and delivered to the appellant in the full amount contemplated and required by the original contract. Such bonds were issued, and a part of them delivered and a part retained by the city of Prescott. These bonds were not issued for the city of Prescott, and it has no right to them. It has acknowledged by its official act that they belong to the appellant. Neither by law nor by contract is the withholding justified.

It is claimed, in counsel's brief at least, that the appellant was relieved of some of the burdens of construction required by the original contract; but that contention is wholly without foundation. It is nowhere denied that the appellant did not do all the work defined by the original contract, and in the manner provided. The city of Prescott has acknowledged that by its official act in concurring in the resolution above set forth.

Some claim is made that the attorney of the appellant, who had charge of its business in the settlement of its demands under the paving contract, had surrendered the disputed bonds, and relinquished all claim upon them. These bonds constituted the entire

matter in dispute, and it would be an extraordinary concession for a mere attorney to relinquish the whole matter in controversy as a basis of "compromise," as the appellee describes it. But this phase of the matter is settled by the written authority upon which the attorney acted. This authority, in the form of a letter, states that its attorney is authorized to leave the disputed bonds with the city of Prescott until the matter should be settled by judicial determination. This seems to be nothing more than a statement that it does not expect its attorney to recover the bonds by physical force.

Finally, whether rightly or wrongly, the appellees seem to feel that the property owners involved have been deprived of some benefit or advantage, which the superintendent of streets secured, or tried to secure, for them, and which the original contractor conceded they were entitled to, and that therefore the surety for the performance of the original contract should somehow or other, rightly or wrongly, be compelled to pay this money. Aside from the fact that there is not a shadow of legal right for such claim against this surety, the inherent vice of the whole transaction, both legal and moral, under which this claim is being made, appears from analysis. If the safeguard against danger from frost was not necessary for the good of the work to be done, it should not have been incorporated in the specifications. If it was necessary, it was wrong to stipulate with the contractor that it might be left out. The law under which this contract was made provides that the work shall be let to the lowest bidder. The bids for the doing of this work were invited and made and received upon the basis of specifications containing the so-called freezing clause. After all other bidders had been eliminated, the superintendent of streets undertakes to barter with the successful bidder for the elimination of one element of expense, in consideration of the payment of upwards of $4,700. It

does not appear how much the other bidders estimated the hazard entailed by that clause. Nobody knows whether the work might have been done with that clause eliminated for $3,000, $4,700, or $5,700, or $10,000 less, or whether the $4,700 represents more or less than some other bidder would have paid for the same privilege. Such a transaction destroys the whole plan of having work done by the lowest bidder; the only plan which protects the property owner from improvidence and fraud. There is no intimation and no doubt but what in this instance the officer acted honestly and conscientiously, though ill-advisedly and unlawfully; but the method he employed is one which might be used by an unscrupulous officer with a great loss and damage to the property owners, and is prohibited by statute.

There is no dispute concerning the facts which determine the rights of the parties in this case. The case is remanded to the superior court, with directions to enter judgment directing the appellees to deliver the bonds, the possession of which is sued for, to the appellant.

McALISTER, C. J., and ROSS, J., concur.