AUTO CAR CO., et v ZANESVILLE
(city)

Common Pleas Court, Muskingum Co

No 30354. Decided July 11, 1939

Graham & Graham, Zanesville, for plaintiff.

John P. Baker, Solicitor, Zanesville, and Clarence J. Crossland, Special Assistant, Zanesville, for defendants.

BELT, J, of Belmont Co, sitting by designation.

## OPINION

By BELT, J.

This cause was submitted to the Court on the pleadings and the evidence and involves the issue as to whether or not plaintiff, C. A. Maxwell, as a taxpayer of the City of Zanesville, is entitled to a permanent injunction.

One of the plaintiffs, The Auto Car Company, after the filing of the petition, withdrew as a party plaintiff and the action subsequently proceeded with C. A. Maxwell, a taxpayer, as the only party plaintiff.

The facts, insofar as the same are pertinent to a discussion of the issues involved, are as follows:

At the November, 1938, election the matter of a proposed bond issue to provide funds to purchase certain fire fighting equipment was submitted to the electors of the City of Zanesville. The said proposal was acted upon favorably at said election and thereafter specifications were prepared, bids advertised for, submitted, and were opened on April 10th, 1939. The advertisement solicited bids on five pumpers with a capacity of 750 gallons per minute each, there being ten separate bidders on the whole of the equipment mentioned.

Under the charter provisions of the City of Zanesville the Mayor, Director of Public Service and Director of Public Safety constitute ex-officio the Board of Purchase of said municipality. Under a further provision of said charter all contracts involving an expenditure of more than $500 shall be advertised and let to the lowest and best bidder.

The bidders were Crawmer Feldner Co., Peter Pirsch & Sons Co., Swingle Motor Company, Buffalo Fire Appliance Corp., Burgess Motor Sales, Auto Car Trucks, Ahrens Fox Fire Engine Co., General Fire Truck Corp., American LaFrance and Seagrave Corp.

After the bids were opened on April 10th nothing further has been done officially by the Board of Purchase; that is to say, no award has been made and no contract entered into. It is averred in the petition, however, and the testimony shows, that after the bids were opened and became public, representatives of these various bidding companies severally offered the Board of Purchase, in the event their companies received the award, to give to the city without further cost certain fire hose in various quantities, some of the bidders offering $3000 worth of fire hose, some $3500 worth and at least one of said bidders offered to give free to the city as much as any of the other bidders. None of the bids had been rejected at the time of the filing of this action and none had been rejected at the time of the oral hearing.

The members of the Board of Purchase, Mr. Moorehead, the Mayor, Mr. Herzer, the Service Director, and Mr. Grant, the Safety Director, testified at the hearing. The general effect of their testimony was that various additional offers having the effect of modifying the bids of the companies had been made since the opening of the bids. Mr. Herzer testified that all of these supplementary offers were made after the bids were opened and the Court understands from his testimony that he solicited further offers by asking the bidding companies, or some of them, what further they had to offer, he (the witness) justifying said procedure by saying that such was the customary practice in private affairs and the customary practice in municipal lettings. He further testified in substance that he conceived it to be his duty to secure as much as possible in this way for the City of Zanesville. There is no suggestion of dishonesty or bribery as to any of the officials constituting the Board of Purchase.

No question is raised as to legality of the procedure until after the bidding was completed and the bids opened. Up to that time the legal requirements seem to have been adequately complied with.

From the foregoing statement, it be-

comes apparent that the only question presented to the Court for determination under the pleadings and the evidence is: was the conduct of the various bidders, after the bids were opened, in the offer of additional equipment to the city on condition that such offering company would be awarded the contract for the fire trucks, such as void the written bids, or, stating it differently, is the bid of a company legally entitled to consideration after such company offers additional inducements to the city, after all the bids are opened, for a favorable consideration of its bid, or does such company by its conduct forfeit such rights as it otherwise would be entitled to receive under the law in a consideration of its bid?

The Court must assume in a consideration of this case that inasmuch as the Board of Purchase has not heretofore rejected all bids, that the members intend, unless restrained, to consider the same as legal bids; otherwise, all the bids would have been promptly rejected.

The law of Ohio as to municipal contracts provides specifically in §4328, GC, that when the Director of Public Service is authorized and directed by ordinance of Council, he shall make a written contract with the lowest and best bidder, after advertisement. It is further provided in §4371, GC, that the Director of Public Safety, when authorized and directed by ordinance of Council, if the amount involves an expenditure of more than $500, shall be governed by the provisions of the preceding chapter relating to public contracts heretofore mentioned. That is to say, no municipal contracts involving an expenditure of more than $500, under the law, shall be entered into until authorized by Council and then only to the lowest and best bidder after the statutory requirements are complied with.

The City of Zanesville, being a charter city, has followed the statutory provisions by providing that the Mayor, Service Director and Safety Director shall be members of the Board of Purchase and shall purchase all equipment, and that all purchases of material exceeding $500 shall be advertised and let to the lowest and best bidder.

It is well settled in Ohio by many decisions that unless the requirements of a statute or an ordinance have been violated, or fraud or its equivalent has been practiced, the discretion of municipal authorities in the letting of contracts to the lowest and best bidder can not be controlled by the courts. It necessarily follows from this pronouncement of the law that unless the various bidders have forfeited their rights to a consideration of their bids the Court would be powerless to interfere in this case.

No authority has been found in Ohio dealing with this precise proposition; therefore, recourse must be had to the general principles of the law, keeping in mind that it is the intent of the law to award municipal contracts after advertisement and after sealed proposals have been made. The general principles of law governing the situation presented here are set out in Section 10 of the chapter entitled "Public Works", found in 22 Ruling Case Law at page 613, as follows:

"The law does not permit private negotiations with an individual bidder, nor any change of plans and specifications submitted for the competition, nor variances for the purpose of obtaining a change in the bid of one or more bidders. The whole matter is to be conducted with as much fairness, certainty, publicity and absolute impartiality as any proceeding requiring the exercise of quasi-judicial authority. Thus, if after advertising for and receiving sealed proposals for the doing of public work for a municipality none of the bids is found satisfactory, the common council has no authority to favor one of the bidders by a negotiation with him privately, changing the scope of work to be done or the terms of payment therefor in consideration of the reduction of his offer. All per-

sons desiring to bid upon the work and willing to comply with the terms prescribed must have equal opportunities to do so; and if the work is not awarded upon the first competition for any legitimate reason, it must be submitted to a second, with full opportunity as before for all persons desiring to participate to do so."

Again in Section 12 of the same chapter:

"An offer to better any other bid received seems to be regarded as not constituting a legal bid. This view is founded on several grounds, it being said, among others, that a legal bid is one complete in itself, requiring no explanation or support from other proposals and capable of being acted on in the entire absence of other bids. * * * Also if this bidding is allowed, the one man, by offering a nominal sum over all others, may appropriate, to his own advantage, the judgments of others, who may have gone to great expense to form a correct opinion, when the very mode of selling was designed to give to each bidder the benefit of his own superior judgment."

"A provision requiring competitive bidding is to be strictly construed and not extended beyond its clear implication."—44 Corpus Juris, Sec. 2491, municipal corp., 325.

This subject is discussed in the case of Casey, et al v Independence County, an Arkansas case, found in 159 S. W. 24, wherein a number of cases are cited and discussed. In the case of Arkansas Bank v. Forrest City Bank, found in 126 S. W. 837, the Court say:

"It is to the advantage of the County that a bidder should not know what bids he is contending against, because he may be anxious for the funds, and might bid a very much higher rate of interest if he was not advised of the highest rate that was offered by the others."

"A city or village can enter into a valid contract for the erection or construction of any work authorized by Section 69, Article 1, Chapter 14, com. statutes 1901, only after it has advertised for bids as required by subdivision 15 of such section, and then only with some person in accordance with a bid tendered by him in response to such advertisement.

"The object of that subdivision is to invite competition and to prevent favoritism and fraud; to attain that object it is essential that the bidders, so far as possible, be placed on equal footing, and be permitted to bid on substantially the same proposition and on the same terms.

"Where the bid filed within the time fixed by the advertisement for receiving bids is substantially changed and modified after such time, it is to be regarded as a new bid received after other competitors, by the terms of the notice, had a right to presume that the contest was closed; consequently its acceptance would be in violation of the provisions of said subdivision, as above construed, and would impose no liability on either party."—Fairbanks Morse & Co. v City of North Bend, 94 N. W. 537. (Neb.)

The Court has examined a number of cases, some of which have been cited by counsel in their briefs, and attention is directed to the following: Inge, et al v Board of Public Works of Mobile, 38 Southern 678; Webster and Huntington v Augustus C. French, et al, 11 Ill. 254; Southern Surety Co. v City of Prescott, 221 Pac. 834; City of Chicago v Mohr, 74 N. E. 1056; Wickwire, et al. v City of Elkhart, 43 N. E. 216. Other cases have been examined but further citation of authority is unnecessary.

The law seems to be well settled and the rule is that where a bid is modified in any particular after the time for bidding has passed such bid can not be considered as a legal bid. This would seem to be the rule of common sense. If bidders are permitted to

make better offers after their sealed proposals have been made and opened, why go through the formality of submitting sealed proposals at all? The sealed proposals in the case at bar seem to have been regarded by the bidders as only trial balloons for the purpose of discovering the contents of the bids of other bidders, after which it seems the real bidding started. If bidders are to be permitted to circumvent the law by making additional offers then bidding would resolve itself into a sort of auction which would continue until the final letting of the contract. Such procedure is not contemplated by the law, nor by the ordinances of the Cty of Zanesville. The Court regards it as unfair, irregular, and, as one of the witnesses has said, "unethical" and fraudulent in effect to permit oral bidding after the time for bidding has passed. Such action is closely akin to bribery and has the same effect.

It has been suggested that the members of the Board of Purchase can divorce from their minds the additional offers made and thus award the contract under the written bids. The answer to that argument is that it would be impossible for the members to do so.

It has been further suggested in the testimony that what has happened in this case is the prevalent custom among bidders in negotiating for contracts. The Court very much doubts the truth of such suggestion, but if true, a vicious custom is in vogue and vigorous measures should be taken to eradicate such a practice from public affairs. The situation is made the more deplorable because everyone of the bidders in the case at bar are familiar with the requirements of the law as to sealed proposals and their actions after the time for bidding had passed is, in the opinion of the Court, most reprehensible.

The finding of the Court is that all of the bidders on this fire fighting equipment by their own conduct have forfeited all right to a consideration of their bids and that the said bids are void, and that, therefore, the Board of Purchase have no legal bids to consider in

the matter of this proposed purchase. It necessarily follows that the temporary injunction should be and hereby is made perpetual and the Board of Purchase is enjoined from further consideration of the sealed proposals as made and from awarding any contract based thereon. A special entry may be prepared in conformity with this finding and exceptions may be noted.