JOHN F. PERRY and others v. RICHARD V. MICHAUX.

*Practice—Injunction.*

An injunction will be dissolved when the answer and affidavits of defendant are full and complete, denying the whole equity of plaintiff, and are credible, exhibiting no attempt to evade the material charges in the complaint and affidavits of plaintiff.

PERRY *v.* MICHAUX.

(*Monroe* v. *McIntyre,* 6 Ire. Eq. 65; *Miller* v. *Washburn,* 3 Ire. Eq. 161; *Sharpe* v. *King,* Ib. 402; *Perkins* v. *Hollowell,* 5 Ire. Eq. 24, cited and approved.)

MOTION, to dissolve an Injunction heard at Fall Term, 1877, of CALDWELL Superior Court, before *Cloud, J.*

The complaint states that in 1864 William Carroll owned a large estate consisting of lands, slaves, and other property, and being advanced in age, he determined to divide his lands among his three sons, William, James and John. Accordingly he conveyed to James a five hundred acre tract in Caldwell county, on which the plaintiff, John Perry, now lives, and also other tracts to his other sons. Shortly after the late war James sold his interest to one Marler, who subsequently sold to the plaintiff Perry. John died during the war leaving a widow and children, and the widow has since intermarried with the plaintiff William Ollis. About the latter part of the year 1862, said William Carroll executed a note to the defendant for $2000 in Confederate money, and after the note fell due, the defendant transferred it to W. F. McKesson who held it for several years after the war. At the time McKesson bought the note he was indebted to said Carroll in the sum of $15,000 in Confederate money. Before the defendant sold the note to McKesson, the said Carroll tendered the full amount thereof in Confederate money, which he refused to receive. When the said deeds were executed, the value of Carroll's estate greatly exceeded the amount of the note to the defendant, even if it was not liable to the set off of the debt which Carroll held against McKesson. That in fact Carroll had taken separate notes of one and two thousand dollars on McKesson, and after reserving enough of them to amount to as much in value as the note he had given to defendant, and which McKesson then owned, he gave the residue to his daughters; that at the time the said deeds were executed, Carroll owed

no debts except the one to defendant, and that he regarded it as satisfied in full by the circumstances above set forth; that the deeds were not made to defraud creditors, and since their execution he has disposed of the balance of his property, and is out of debt, unless he owes the note given to defendant; that since the war he had repeatedly requested McKesson to settle and surrender the Michaux note to him, which he had refused to do, but continued to hold it for the purpose of selling it to some third person; and to prevent this the plaintiffs agreed to buy it, and for that purpose they employed Alfred Perry, the father of the plaintiff, John, and agreed to pay him for his services; that Alfred understood the agency and applied to McKesson to buy the note, but he refused to sell it to any one but Alexander Perry, a son of Alfred, and Alexander did buy the note for forty dollars and took an assignment of the same and delivered it to his father, Alfred, who kept it until the said defendant by a trick or some contrivance obtained possession of it from said Alfred; and that the defendant had notice that the note was purchased as aforesaid for the benefit of the plaintiffs, and has not paid any one for the note, but got possession thereof by snatching it, or by a fraudulent combination with said Alfred, to cheat the plaintiffs.

The complaint further states that shortly after obtaining the note, the defendant brought suit on it against William Carroll, recovered judgment and caused execution to issue, and has had his homestead laid off entirely on the land of the plaintiff, John, and has directed the sheriff to advertise and sell the other lands levied on; that either from ignorance or enmity to plaintiffs induced by defendant, the said Carroll refused to defend said suit, or to allow plaintiffs to intervene for that purpose; wherefore the plaintiffs asked that an injunction issue to restrain the defendant from selling said land, and that it be declared that

said note is the property of plaintiffs and satisfaction thereof be entered of record. Thereupon in Statesville at Chambers on the 19th of July, 1877, before *Furches, J.*, a restraining order was granted, and the defendant notified to appear and show cause why an injunction should not issue.

In obedience to said order the defendant appeared at said term and filed his answer, in which he stated in substance, that Carroll conveyed the said lands to his children with intent to defrad his creditors; that said Marler did not sell to plaintiff as alleged, but that James contracted to sell to Marler, and took his note for the price, and Marler left the State without paying it, and said Alfred induced James to receive his note in place of Marler's and took a deed therefor, with notice of the fraudulent intent in the conveyance of William Carroll as aforesaid; and that Alfred then conveyed to the plaintiff, John, with like intent. The defendant alleged that after the execution of the note, Carroll sold his slaves to McKesson for a large sum payable in Confederate money, for a part of which, notes were made payable to Carroll and to his daughters, as advancements, long before he executed the deeds to his sons; and denied that he retained any of said notes to offer as a set off to the Michaux note, or retained property sufficient to pay his debts after making the said deeds which were voluntary and without consideration; that defendant has no knowledge of the alleged transaction in which said agent was employed to buy said note, and does not believe it to be true, and he alleged that in 1872, he bought said note back from McKesson, giving him credit for the amount, on a note which he held against him for $4,130, dated March 27th, 1863, and thereupon McKesson gave defendant an order on his attorney, in whose hands said note had been placed for collection, and upon presentation of the order, he was informed by the attorney that it had been returned to McKesson; that the defendant then sent said Alfred Perry to

7

McKesson for the note, and on his return he stated to defendant that McKesson said he could not find it; that the defendant afterwards heard that said Perry had the note, and on demanding the same he was refused, and informed by Perry that he bought it of McKession; and upon an adjustment of the matter between them at the office of an attorney in Morganton, Perry delivered the note to defendant's attorney, and suit was brought thereon, and Carroll appeared and answered the complaint therein, at Spring Term, 1873; and at a subsequent term the case was continued upon affidavit of William Carroll, Jr., as agent of his father, and one of the plaintiffs in this action, and at Fall Term, 1876, a trial was had, which resulted in a verdict and judgment for Michaux; whereupon the defendant asked that the restraining order heretofore granted be dissolved.

The complaint and answer were supported by the affidavits of the parties. His Honor refused the motion to dissolve, and continued the injunction, from which ruling the defendant appealed.

*Mr. G. N. Folk*, for plaintiffs.
*Mr. R. F. Armfield*, for defendant.

BYNUM, J. If upon the hearing of an answer the statements are such as to leave upon the mind of the Court a reasonable doubt whether the plaintiff's equity is sufficiently negatived, the injunction will not be dissolved, but be continued to the hearing. *Munroe* v. *McIntyre*, 6 Ire. Eq., 65; *Miller* v. *Washburn*, 3 Ire. Eq., 161.

But it is also a well settled rule that when by the answer the plaintiff's whole equity is denied, and the statement in the answer is credible and exhibits no attempt to evade the material charges in the complaint, an injunction on motion will be dissolved: *Perkins* v. *Hollowell*, 5 Ire. Eq., 24; *Sharpe* v. *King*, 3 Ire. Eq., 402.

In the case before us the answer is full and complete, containing a positive and specific denial of every material allegation of the complaint, accompanied with such a connected and reasonable narration of the facts of the case, that no Court could hesitate to dissolve the injunction, if it were here upon complaint and answer alone. Do the affidavits of the plaintiffs' and defendant, made a part of the case, present it in a different aspect? We think not. The complaint, from its vagueness of statement and evident suppression of matters within the knowledge of the plaintiffs, peculiarly as the dates and places of the occurrence, upon which they found their equity, is in striking contrast with the precision and minuteness of statement in these particulars, by the defendant. For instance,—the complaint does not set forth the date of the deeds under which the plaintiffs claim, or of the sale of the negroes, but it does state that at the time the deeds were executed, William Carroll owned a large number of slaves and other property, far more than enough in value to satisfy all his debts, when in truth as is clear from the affidavit of Carroll himself, the negroes had all been sold six months before the deeds to the land were executed. And so the important fact is suppressed that the note to Michaux was executed only a week before Carroll sold all his negroes, and six months before he conveyed away without consideration, all his lands, and six months before the note fell due; so that before the maturity of the note, the debtor Carroll had made way with all his property, negroes and lands.

The affidavits so far from helping the plaintiffs' case, compromise it, in this, that they make clear what was only obscurely seen in the complaint, to-wit, that Carroll had made way with his property to avoid his creditors, and that the plaintiffs knew it, and were conscious that they could not hold the land unless they could succeed in getting up the Michaux debt. Did they purchase and acquire the title

to the note given by Carroll to Michaux? Unfortunately
the main witness to establish this is Alfred Perry, the al-
leged agent who made the purchase. He does not directly
deny the charges in the answer that he was the messenger
sent by Michaux to McKesson for the note after the defen-
dant had repurchased the note, and given McKesson credit
for it on a larger note which he held on the latter.

On his own affidavit he stands self-convicted of duplicity
of conduct, and of assenting to a division of the proceeds
of the note with the defendant, and of the actual receipt of
a part of the money. It is reasonably certain, upon the
whole case, that Michaux, for full value, purchased and was
entitled to the possession of the note. It is therefore imma-
terial how he obtained the actual possession, whether by
snatching as the plaintiffs allege, or by paying tribute to a
faithless agent who was acting in collusion with the plain-
tiffs or for his own corrupt gain, as the defendant alleges,
with the better reason as we think. For early in 1873,
Michaux brought suit upon the note against William Car-
roll, the obligor. The plaintiffs, it is confessed, then knew
that the defendant had possession of the note, how he had
acquired it, and that he was enforcing its collection as the
owner. This action was pending until 1876, before judg-
ment was rendered, during all of which time the plaintiffs
herein, though cognizant of all the facts, neither asserted
nor made claim of the ownership of the note, but so far
from it, one of the plaintiffs, William Carroll, Jr., acted
as agent of his father in defending the action, by filing an
affidavit for continuance and alleging a tender and refusal
by the father, of the principal and interest of the note. If
these plaintiffs had a pretence of title to the note, why did
they for three years stand silent spectators of Michaux
possessing and claiming the note as his own, suing on it
and prosecuting his action to final judgment against Car-
rol? No claim was made, no action instituted by them

against Michaux to try the title until an execution is levied upon their land, four years after the commencement of the action. It is too late, even if the claim had the appearance of credibility. The plaintiffs have failed to make out a case for a continuance of the injunction to the hearing, and it must therefore be dissolved upon the answer and counter affidavits.

When the land shall be sold under the execution, and the purchaser put to his action for the possession, it will be time enough for the plaintiffs, if they desire to defend further, to assert their title as purchasers for value without notice, or that Carroll, when he executed the deed retained property amply sufficient to pay his then debts, or any other defence to the action not involving the title to the note and judgment. There is error. Judgment reversed, and injunction dissolved.

