VARSER, J., did not sit.
The plaintiff alleges that L. O. Pollock, a former cultivating tobacco, and Loftin, Haddock, Brown, Jerkins, Hill and Parker, his tenants, are members of the plaintiff association, all having executed the marketing agreement set out in Exhibit "A" and having delivered to the association a part of the tobacco raised by them in 1922 and 1923, and that in violation of their agreement they sold a portion to parties other than the plaintiff and in December, 1923, announced their purpose not to deliver any more of their tobacco to the plaintiff association. For this reason the plaintiff instituted an action against these defendants in the Superior Court of Onslow County on 21 October, 1923, to enjoin them from disposing of their crops to any one except the plaintiff. The judgment was reversed on appeal (187 N.C. 409) and the restraining order was continued to the final hearing. Thereafter (in September, 1924) L. Harvey Son Co., by virtue of an alleged agricultural lien and chattel mortgage, took control of the tobacco cultivated by Pollock and said tenants and threatened to dispose of it through parties other than the plaintiff association. It is alleged that the Harvey Company took the tobacco at the request of Pollock and with knowledge that the restraining order above referred to had been continued. On 18 February, 1924, Pollock executed and delivered to the Harvey Company an agricultural lien and chattel mortgage on the crops of 1924, to secure an indebtedness to it of $5,000 and on the same day a similar instrument to Dixon Bros. to secure an indebtedness to them in the same amount. Both these papers were acknowledged and filed for registration on 18 November, 1924, the latter at 11 a.m. and the former at 12 m. It is alleged that the Harvey Company and Dixon Bros. knew the contents of the marketing agreement and that Pollock was a member of the association and had announced his intention not to deliver to the plaintiff any other tobacco grown by or for him and that the plaintiff was seeking to enjoin him from disposing of his tobacco except as provided in his agreement. The Harvey Company, it is said, knew that Pollock was solvent, that he had not formerly given a mortgage on his crops; that the lien was not necessary to secure the amount alleged to be due the lienors; that the amounts advanced were small in comparison with the sum secured; *Page 496 
and that the lien was a device resorted to for the purpose of defeating the injunction. The plaintiff says that the prices charged for the advances made were in excess of those fixed by C. S., 2482. On 17 April, 1924, the tenants named above to secure advances executed to the Harvey Company and to Dixon Brothers agricultural liens and chattel mortgages. The former were filed at 3 p. m. and the latter at 4 p. m. on 19 April. It is asserted that the lienors knew that the tenants were members of the plaintiff association; that they had delivered to it a part of their tobacco and had said they would not deliver any more; that the liens were in excess of the advancements; that the prices were in excess of those allowed by the statute; and that the liens were executed in pursuance of a fraudulent scheme to defeat the agreement made with the plaintiff by Pollock and his tenants.
Upon the complaint, which was treated as an affidavit, Judge Allen, on 22 September, 1924, issued a temporary restraining order returnable before Judge Daniels at Goldsboro on 4 October, 1924, and on the same day at the request of the defendants, who had not had previous notice of the plaintiff's motion, his Honor issued a notice to the plaintiff to show cause before him at the courthouse in Kinston on 25 September, why the restraining order should not be vacated or modified.
Pollock and his tenants filed an answer which was treated as an affidavit; and affidavits were filed on behalf of the Harvey Company and Dixon Bros. In these affidavits all the material allegations of the plaintiff are denied, and exhibits are attached showing an itemized statement of the advances made by the lienors.
At the hearing his Honor vacated the temporary restraining order theretofore issued by him and the plaintiff appealed upon the following assignments of error:
1. That his Honor erred in overruling the plaintiff's objection to his jurisdiction and in holding that he had jurisdiction to hear the motion to vacate or modify the restraining order.
2. That the court erred in admitting the affidavits of C. F. Harvey, Jr., Dan Quinerly, J. K. Dixon and Allen Knott.
3. That the court erred in denying the plaintiff's motion for continuance in order to enable it to prepare and present affidavits in support of the complaint and in answer to the affidavits and answer filed by the defendants.
4. That the court erred in denying the motion of the plaintiff that the temporary injunction be continued until the final hearing of the cause.
5. That the court erred in denying the motion of the plaintiff that the temporary restraining order be continued until the original date set for the hearing before Hon. F. A. Daniels. *Page 497 
6. That the court erred in signing the order vacating the restraining order.
7. That the court erred in denying the plaintiff's motion for continuance of the restraining order pending the appeal under the provision of chapter 58 of the Public Laws of 1921.
8. That the court erred in refusing to require a bond of the defendants L. Harvey Son Company and Dixon Brothers.
In reference to the second assignment of error (the first having been abandoned) the plaintiff cites Ransom v. Shuler, 43 N.C. 304, as authority for the position that a motion to dissolve an injunction before the answer has been filed is premature. There an injunction was granted upon the bill and at the first term the defendant demurred for want of an equity; the demurrer was set down for argument at the next term and then the defendant's counsel moved to dissolve the injunction. The Court said, "There is an obvious inconsistency in such a course, for the motion to dissolve must be founded on the defects and insufficiency of the bill itself, and therefore it involves precisely the same questions of equity which must arise on the demurrer when brought on for argument and decision. It is, therefore, an attempt to obtain by the summary action on a motion a declaration of the court as to the equity between the parties, which is to come up for solemn determination on the demurrer." It is now provided that a motion to vacate or modify an injunction may be made upon the complaint and affidavits on which it was granted or upon affidavits filed on the part of the defendants, with or without answer, and that a verified answer shall have only the effect of an affidavit. C. S., 856 et seq. The time when the affidavits should be filed was a matter largely within the discretion of the judge. This is true likewise as to the matters involved in the third, seventh, and eighth exceptions; and for this reason all these exceptions must be overruled. The fourth, fifth, and sixth present the chief controversy between the parties.
The plaintiff first contends that the affidavits raise an issue of fraud which requires the intervention of a jury. The allegations relating to this issue are substantially as follows: (1) The lienors took possession of the tobacco crop at the request of the lienees; (2) all parties knew that the restraining order had been issued; (3) the liens were executed the same day and filed together for registration; (4) the lienors knew that the lienees were members of the plaintiff association and that *Page 498 
they had previously delivered tobacco to it under their marketing agreement; (5) the principal lienee had not theretofore mortgaged his crop to secure advances and it was unnecessary for him to execute a lien or mortgage for this purpose; (6) the amount secured by the liens was in excess of the advancements; (7) the prices charged were in excess of those authorized by C. S., 2482; (8) the lienors took possession of the crop of tobacco but did not take possession of the other crops; (9) the acts complained of were the result of a fraudulent scheme to enable the lienees to evade their obligations to the plaintiff association.
We are not inadvertent to decisions holding that where the pleadings raise material issues of fact or where the relief sought is not merely ancillary, but is itself the principal relief demanded, the restraining order will be continued to the final hearing if a prima facie case is made out. Marshall v. Comrs., 89 N.C. 103; Jones v. Lassiter, 169 N.C. 750;Cobb v. R. R., 172 N.C. 58; Byrd v. Hicks, 184 N.C. 628. But it is by no means clear that the allegations recited above, considered separately or collectively are sufficient to constitute actionable fraud, the last (ninth) assuming the character of a legal conclusion. If the several acts set out were not illegal or fraudulent in themselves they were not made so merely because prompted by an alleged evil motive which the defendants deny. We had occasion to consider this question in Bell v. Danzer,187 N.C. 224, and there decided that the exercise of a right which does not infringe the legal right of another is not actionable even when prompted by malice, and that the motive is immaterial if the act is otherwise lawful. If the lienors actually made advancements to enable the lienees to produce their crops and were entitled to the possession of the tobacco for the purpose of enforcing the liens, a sinister motive would not in itself defeat the legal right. It is important to note that there is no allegation that the lienors' claims are fictitious or that the secured debts were not contracted, although the amount really advanced is in controversy. True, the plaintiff alleges upon information and belief that the lienors charged more than ten per cent over the retail cash price of the advances in breach of C. S., 2482; but the lienors deny this upon oath and affix an itemized statement of the advances.
In Riggsbee v. Durham, 98 N.C. 81, 87, it is said: "`But,' as was said by Bynum, J., in Perry v. Michaux, `it is also a well-settled rule, that when by the answer of the defendant, the plaintiff's whole equity is denied, and the statement in the answer is credible and exhibits no attempt to evade the material charges in the complaint, an injunction, on motion, will be dissolved.' Perkins v. Hollowell, 40 N.C. 24; Sharpe v. King,38 N.C. 402. This is clearly so, if, upon the complaint, answer and affidavits, it appears that the plaintiff's claim to have *Page 499 
the restraining order continued, is fully met." In our opinion the injunction should not be continued for such alleged fraudulent collusion, especially in view of the admitted solvency of the lienors.
The decisive question, therefore, is this: Is the legal relation of the lienors to the other parties to the suit such as to require the collection of their claims through the plaintiff association according to the method by which it usually distributes the proceeds arising from a sale of the crops under the marketing agreement, or may they foreclose their liens independently of the marketing agreement?
The agreement between the association and its members contains these sections: (2) The association agrees to buy and the grower agrees to sell and deliver to the association all of the tobacco produced by or for him or acquired by him as landlord or lessor, during the years 1921, 1922, 1923, 1924, 1925. (4a) All tobacco shall be delivered at the earliest reasonable time after picking or curing, to the order of the association. (11) The grower shall have the right to stop growing tobacco and to grow anything else at any time at his free discretion; but if he produces any tobacco, as landlord or lessor, during the term hereof, it shall all be included under the terms of this agreement and must be sold only to the association. (12) Nothing in this agreement shall be interpreted as compelling the grower to deliver any specified quantity of tobacco each year; but he shall deliver any the tobacco produced by or for him. (13a) This agreement shall be binding upon the grower as long as he produces tobacco directly or indirectly, or has the legal right to exercise control of any commercial tobacco or any interest therein as a producer or landlord during the term of this contract. (13c) If the grower places a crop mortgage upon any of his crops during the term hereof, the association shall have the right to take delivery of his tobacco and to pay off all or part of the crop mortgage for the account of the grower and to charge the same against him individually. The grower shall notify the association prior to making any crop mortgage and the association will assist the grower in any such transaction as far as it deems proper.
The plaintiff says that the marketing agreement effects a present sale of future crops to be delivered at the earliest reasonable time; that the lienors had knowledge of this agreement and took their liens subject to the plaintiff's equitable title; and that this principle is not affected by the statutes relating to the probate and registration of instruments required or allowed by law to be registered in the office of the register of deeds. C. S., ch. 65.
We do not concede the accuracy of the plaintiff's position. A sale is the transmutation of property from one man to another in consideration of a price or recompense in value; and if it be granted that the crops *Page 500 
in question had a potential existence when the marketing agreements were made (a circumstance which the defendants do not grant), we fail to discover in the agreements any present transfer of title from the defendant members to the association. In the express words of the contract the "association agrees to buy and the grower agrees to sell and deliver" the tobacco; and moreover they agree "that this is a contract for the purchase and sale of personal property." The crop is described as that of the grower, and he may "place a mortgage upon any of his crops." See Marketing Agreement, secs. 2, 5, 13c, 18a, 18b. The agreement considered in its entirety imports, not a present sale of future crops or a mortgage of after-acquired property, but an executory contract between the association and its members enforceable by a suit for specific performance. Indeed, this remedy not available where the title has actually been transferred, seems to be approved, not only by the courts, but by the terms of the agreement itself. By statute and by agreement the association is given an equitable remedy for the breach of an executory contract. Public Laws 1921, ch. 87, sec. 17c; Agreement, 18b; Tobacco Association v. Battle,187 N.C. 260; Tobacco Asso. v. Spikes, 187 N.C. 367; Tobacco Asso. v.Patterson, 187 N.C. 253.
Under these circumstances it is not necessary to enter into a discussion of the principle underlying the right of priority between antagonistic claimants for the reason that the specific question presented has heretofore been determined by this Court. In Tobacco Asso. v. Patterson,supra, Mr. Justice Hoke, said: "It is true that a member may place a mortgage or crop lien on his crop for the current year for the purpose of enabling him to successfully cultivate and produce the same, the contract between plaintiffs and defendant clearly contemplates such a mortgage, and good policy requires that such a privilege should never be withdrawn, and we understand that plaintiff has no desire or purpose to interfere with any such claim to the extent that it constitutes a valid and superior lien to plaintiff's rights and interests under the contract." . . . "The matter here is not further pursued for the reason that the mortgagee is not thus far a party, and until he is, his rightful claims should not and cannot be in any way impaired and jeopardized in this proceeding, nor, as a rule, should a grower's rights to place a mortgage on his crop for the bona fide purpose of raising the same be in any way hindered or lightly interfered with." This decision expressly recognizes and approves the grower's legal right to execute a mortgage or crop lien for the current year in order that he may produce his crop, as it likewise construes the marketing agreement as contemplating the execution of such lien or mortgage. The plaintiff, it is true, undertakes to differentiate the instant case from Patterson's in these respects: (1) in the latter the mortgagee was not a party; (2) there was no allegation *Page 501 
or evidence that the mortgage had notice of the marketing agreement; (3) the relative rights of the mortgagee and the association were not presented; (4) there was no question of collusion between the grower and the mortgagee.
The distinction is apparent rather than real. The question of collusion has been referred to; and with respect to the other points of difference it may be said that the brief filed by the plaintiff in Patterson's case
apparently recognized the outstanding mortgage. While the mortgagee was not a party the relative rights of the parties were, nevertheless, discussed. In its brief the plaintiff said, "The creditor Roberson (mortgagee) has a security right only. He has a title but not a beneficial title; merely a security title. He can protect his security and if necessary can, in a proper proceeding, apply the security to the discharge of the debt." This is just what the mortgagees in the instant case are seeking to do.
The plaintiff says, however, that by virtue of the agreement, sec. 13c, it may "pay off all or a part of the crop mortgage"; that is, that the association may take the tobacco and pay the lines "according to its regular method of distribution," and that the lienors cannot otherwise enforce their security. Several cases from other jurisdictions are cited in support of this position, among them Redford v. Tobacco Asso., 266 S.W. (Ky.), 24; Tobacco Asso. v. Dunn, ibid. (Tenn.), 308; Feagain v. TobaccoAsso., 261 S.W. (Ky.), 607; Wheat Asso. v. Floyd, 227 Pac. (Kan.), 336;Oregon Asso. v. Lentz, 212 Pac. (Or.), 811. But these cases, however persuasive on the questions decided, have no bearing upon our interpretation of local statutes dealing with agricultural liens which the Legislature clearly intended to prefer. C. S., 2480 et seq. In these statutes it is provided that advances in money or supplies to a person engaged in the cultivation of the soil may be secured by a lien on the crops made during the year upon the land in the cultivation of which the advances have been expended. The phraseology of the statutes and the legislation affecting the subject manifest a policy to encourage such advances by preferring them to all other liens. It is immaterial that no "lien" is given the plaintiff under the terms of its agreement; if the plaintiff's claim under the agreement be given priority over the agricultural lien the legislative intent to protect the lienor must yield to an agreement to which he is not a party, and for the execution of which he is not responsible. It is upon this principle that we sustain the ruling of the lower court.
It is finally urged that the entire amount secured by the lien includes indebtedness other than that incurred for advances; but it is unquestionable that advances were made, and if the amount is disputed it may be determined in the present action. We must therefore hold that the *Page 502 
plaintiff is not entitled to an order enjoining the lienors from enforceing their liens to the extent of the amounts advanced by them for the "current year" to enable their codefendants to cultivate and produce their crops.
The judgment is
Affirmed.
VARSER, J., did not sit.