T. J. MURPHY et al v. CITY OF GREENSBORO, MURRAY CONSTRUCTION COMPANY, and P. C. PAINTER, City Manager.

(Filed 14 October, 1925.)

**1. Municipal Corporations — Cities and Towns—Suits—Taxpayers—Parties.**

It is not required that a taxpayer of and property owner within a municipality first apply to the municipal authorities before seeking injunctive relief from their action affecting the taxpayer's interest, or maintain the position that the municipal corporation was the necessary party plaintiff in the suit.

2. **Pleadings—Demurrer.**

A demurrer to a complaint will not be sustained when the various material matters alleged separately, or any of them, construed with the legal inferences permissible therefrom, are sufficient, if established, to state a cause of action.

3. **Injunction — Municipal Corporations — Cities and Towns—Streets— Bidding—Statutes.**

Injunctive relief against a municipality will be available to a citizen thereof and taxpayer therein, when in a suit in behalf of himself and others so situated, he alleges that the municipal authorities accepted a bid for street paving higher than that submitted by another responsible bidder, induced thereto by personal favor. C. S., 2830.

4. **Municipal Corporations—Principal and Agent—Delegated Authority— Judicial Acts—Committees.**

The municipal authorities in passing upon bids for street improvements, C. S., 2830, are acting in a *quasi*-judicial capacity, and may not delegate this power to a subcommittee under an agreement to accept the report of the committee thereon as their own act, and give it validity.

5. **Pleadings—Speaking Demurrer—Municipal Corporations—Cities and Towns—Charter.**

A demurrer to an action that relies upon the private charter of a city (defendant) in addition to the cause of action stated in the complaint, is bad as a "speaking demurrer."

APPEAL by plaintiffs from a judgment of *McElroy, J.*, May Term, 1925, of GUILFORD, sustaining demurrers to the complaint.

The action was brought to enjoin the execution of a contract between the city and the Murray Construction Company, or, if already executed, to have it canceled and declared void.

The material allegations of the complaint may be condensed and summarized. Plaintiffs reside and have property in the city of Greensboro, which is a municipal corporation governed by a board of seven councilmen and the city manager, and the Murray Construction Company is a corporation organized under the laws of Tennessee. The city manager is active in the conduct and management of the affairs of the city, including its contracts. The governing body resolved to pave certain streets, covering a distance of six and a half linear miles, at a cost of several hundred thousand dollars. The city manager and some of the members of the city council took the position that they could award the contract for paving these streets to the Murray Construction Company without public notice or advertisement, as provided by C. S., 2830, to which other members of the council did not agree; but the mayor, councilmen and city manager were advised that it would not be lawful to award the contract without giving the statutory notice. It has been the custom to give such notice by repeated adver-

tisement in two of the city papers—such notice having been given on one or more occasions in the *Manufacturer's Record* and in papers published outside the State, for the purpose of increasing competition. On 13 March, 1925, the following notice was inserted one time in the Greensboro *Daily Record,* an afternoon paper of local circulation:

### "STREET PAVING

"Proposals will be received by the city council of Greensboro, North Carolina, until 2:15 o'clock p. m., Tuesday, 24 March, 1925, for the paving and work incidental thereto on certain streets in the city of Greensboro, North Carolina. Plans and specifications may be obtained by applying to George E. Finck, Highways Engineer, City Hall, Greensboro, North Carolina.

"Each bid must be accompanied by a certified check in the sum of $7,500, made payable to the city of Greensboro, North Carolina, which will be forfeited if contract is awarded and the contractor fails to sign the contract.

"All bids shall be sealed and marked on the outside 'Bid for street paving,' addressed to P. C. Painter, City Manager, Greensboro, North Carolina.

"The bids will be opened publicly and read at the City Hall on Tuesday, 24 March, 1925, at 2:15 o'clock, p. m.

"The city reserves the right to accept or reject any or all bids.

"P. C. PAINTER, *City Manager.*"

"G. E. FINCK, *Highways Engineer.*"

On the day named for opening the bids the State Highway Commission received bids for the construction of highways to cost between one and two million dollars, and the defendants knew that many persons, firms, and corporations engaged in this work would then be in Raleigh. Lassiter & Co., a corporation organized under the laws of North Carolina, has for several years maintained an office in Greensboro and to the knowledge of the defendants has been engaged in street paving and road construction in and near the city for a number of years, having a complete paving plant and organization. On the day named in the notice Lassiter & Co. filed with the city council its sealed bid for the construction of the proposed work for $531,875, and its check for $7,500 together with a certificate from a responsible surety company that if the bid were accepted the required bond would be given. Lassiter & Co. was ready, able and willing to complete the work according to the requirements and specifications and within the time named by the defendants. The Murray Construction Company also filed

its bid, which was $566,502. This sum exceeded Lassiter's bid by $34,627. These two were the only bids. At the time designated the bids were opened and read, but the contract was not then awarded. Instead of then acting upon the bids received and passing thereon, and either accepting the lower bid of Robert G. Lassiter & Co. or rejecting both of the said bids, the said city council postponed action until the next day at 11 o'clock, pretending that it desired in the meantime to ascertain whether or not Robert G. Lassiter & Co. was in position to begin the work at once and to finish it within the time limit required, and the said city council instructed the city manager to make such investigation and report it at 11 o'clock the next morning, whereas in truth and in fact, as this plaintiff alleges on information and belief, the delay was for the purpose of devising some scheme by which the said city council could accept the bid of the Murray Construction Company and disregard the bid of Robert G. Lassiter & Co., which was the only competing bid and which would have saved a large sum of money to the taxpayers of the city of Greensboro; that the final disposition of the said bids was delayed from time to time until Monday, 30 March, 1925, and that in the meantime the Murray Construction Company was allowed to file with the said city council, or with some member thereof, a new and secret bid, which bid was not filed in accordance with the requirements of law, nor opened as provided by law; that on Monday, 30 March, as aforesaid, the said city council wrongfully and unlawfully awarded the contract to the Murray Construction Company, and thereby accepted, or attempted to accept, a bid filed and opened secretly and unlawfully and in violation of the law and in contravention of the interests and rights of the citizens and taxpayers of the city of Greensboro, and this letting to Murray Construction Company was with a full knowledge on the part of the mayor and city council that between 24 March and 30 March, 1925, tests had been made as to the sufficiency of some of the work theretofore done by Murray Construction Company and as to whether it complied with the specifications under which said work had been done, and that a number of such tests disclosed that the Murray Construction Company had not complied with its contract for said work, and that there were several streets on which the yardage, as claimed by Murray, did not check with the estimate of the city's engineers. Much of the work heretofore done by Murray Construction Company is not, to the knowledge of the mayor, city councilmen and city manager, in compliance with the city's specifications under which said work was done, and this knowledge on the part of the mayor, city councilmen and city manager was in their possession prior to 30 March, 1925. On 26 March, 1925, Lassiter & Co. wrote the city manager a letter

indicating its readiness and ability to comply with the proposed contract. Between the time of the filing and opening of the bids on 24 March, 1925, and the letting of the work to the defendant Murray Construction Company on 30 March, 1925, in some way it was arranged for the appointment of a committee of three, and that a committee of three was appointed consisting of City Manager Painter and two members of the city council to determine the award of the contract, with the agreement that all the councilmen should and would vote to let the contract for the construction of the said work as the said committee might report and recommend. Between the opening of the bids on 24 March, 1925, and the meeting of the board of city councilmen at 2:30 o'clock p. m. on 30 March, 1925, either through the committee aforesaid or at a secret meeting of members of the council of the city of Greensboro, or some of them, it was agreed to award this work to Murray Construction Company at the sum of five hundred forty-eight thousand six hundred thirty-nine dollars ($548,639), and at the meeting on Monday, 30 March, at 2:30 o'clock p. m., as aforesaid, the city councilmen, pursuant to their agreement to abide by the decision of the committee aforesaid and by way of carrying out and giving effect to the secret agreement entered into by them prior to that time in conjunction with defendant Murray Construction Company, unanimously voted to award this work to the said Murray Construction Company at the sum of five hundred forty-eight thousand six hundred thirty-nine dollars ($548,639), which was a mere formal vote made in compliance with the terms of the secret agreement referred to, thereby unlawfully accepting an entirely new bid and at a new price, wrongfully and unlawfully disregarding the sealed bids, and accepting a bid not filed in accordance with law, in that, among other things, the same was not a sealed bid nor made in compliance with law regulating such matters, and was in excess of the bid of Robert G. Lassiter & Co. in the sum of sixteen thousand seven hundred sixty-four dollars ($16,764). The cost of the construction of the work hereinbefore referred to is in the first instance paid for by the defendant city out of funds raised by taxation or otherwise, which is in part recouped by assessments against abutting property. It was the intention of P. C. Painter, city manager, and one or more of the city councilmen, to let this work to the Murray Construction Company without any notice or advertisement for bids, and at a price not less than that for which the Murray Construction Company had been doing similar work for the said city, notwithstanding the fact that recently competition among persons, firms and corporations engaged in the business of paving and highway construction had become considerably keener and the prices in consequence of such competition lower than the prices which the

said city of Greensboro had been paying to the defendant Murray Construction Company for similar work, all of which was well known to the city manager and to at least some members of the city council. P. C. Painter, city manager, was for some reason unknown to the plaintiff unduly active in his efforts to secure the award of the contract for this work to the defendant Murray Construction Company. The final award of the said contract was made upon a bid not filed in accordance with law nor publicly opened, as required by law, but was made upon a secret bid presented to the said city councilmen at a time and place other than the regular and lawful meeting, and acted upon by them at such time and place. The carrying out of the said unwarranted and illegal contract with the said Murray Construction Company by the defendant city of Greensboro will impose a considerable unlawful burden upon the taxpayers of the city of Greensboro, including the plaintiff. The moneys paid or proposed to be paid under the said contract will be derived from the taxes levied upon persons and property within the corporate limits of the said city, and this plaintiff has no relief against the unwarranted and unlawful conduct of these defendants other than by injunction, and to protect his rights and the rights of others similarly situated he has brought a suit in the Superior Court of Guilford County entitled as above. The plaintiff brings this action as a property owner in and a taxpayer of said city and in behalf of himself and all other persons similarly situated.

The grounds of the demurrers are as follows:

1. The complaint does not allege:

(a) Any action or threatened action by the city council of said city which is beyond the authority conferred by charter or otherwise; or

(b) Such a fraudulent transaction completed or contemplated by said city council as will result in injury to said city or to the interests of its citizens; or

(c) That the members of said city council, or a majority of them, in accepting the bid of defendant Murray Construction Company, referred to in the complaint, were acting for their own interest in a manner injurious to said city or to the rights of the citizens thereof; or

(d) That the city council in awarding the contract referred to in the complaint to the defendant Murray Construction Company acted corruptly or in their own individual interests or in derogation or contravention of the rights of plaintiff and other citizens of said city.

2. The complaint does not allege that prior to the institution of this action plaintiff had exhausted all means within his reach to obtain from said city council redress of the alleged grievance of which he complains, or action with reference to said contract in conformity with his wishes.

18—190

3. The complaint does not allege that prior to the institution of this action plaintiff requested or demanded of said city council that they refrain from awarding said contract to said Murray Construction Company, or that after said contract was awarded to said Murray Construction Company they declined to carry out said contract and declare it null and void.

4. The complaint does not allege that prior to the institution of this action plaintiff had first presented in writing his claim or demand to said city council in connection with the matters and things set out in the complaint, and said city council had declined to grant said claim or demand, or for ten days after such presentation had neglected to enter or cause to be entered upon its minutes its determination in regard thereto.

5. The complaint does not allege that prior to the institution of this action plaintiff had complied with the provisions and requirements of C. S., 1330.

6. The complaint does not state facts sufficient to constitute a cause of action.

The separate demurrer of the Murray Construction Company is practically the same, with these additions:

5. The complaint does not allege that prior to the institution of this action the plaintiff complied with the requirements of the charter of the city of Greensboro and presented in writing his demand to the governing body of said city with reference to the matters and things therein alleged, and that said governing body had declined to comply with said demand, or for ten days after such demand had neglected to enter or cause to be entered upon its minutes its determination with reference thereto, as by law provided.

7. It appears from the face of the complaint that the matters and things complained of were within the discretion of the governing body of the city of Greensboro.

*King, Sapp & King* for the plaintiffs.
*B. L. Fentress, Robert Moseley,* and *Bynum, Hobgood & Alderman* for the City and City Manager.
*A. Wayland Cooke* for the Murray Construction Company.

ADAMS, J. By their demurrers the defendants denounce *in limine* the plaintiffs' alleged right to maintain their suit. They assert that the cause of action existed primarily in the city and that the plaintiffs must fail because they neglected to apply to the city council to prevent or to correct the evil of which they complain—that they should have sought relief through the municipality before applying therefor to a court of equity.

When a person becomes a stockholder in a corporation he assents to the execution of all the powers which the law confers upon the corporation and agrees to abide by the action of the governing body as to all matters properly under its control.　For this reason before bringing suit against the corporation to protect its rights or to redress its wrongs he must ordinarily seek remedial action through the directorate or the other controlling authorities of the corporation itself.　This principle is elementary and requires only a brief citation of authority. 2 Purdy's Beach of Pri. Corporations, sec. 562 *et seq.;* Cook on Corporations, sec. 740; 14 C. J., 879; *Huntington v. Palmer,* 104 U. S., 482, 26 Law Ed., 833; *Stewart v. Steamship Co.,* 187 U. S., 466, 47 Law Ed., 261; *Merrimon v. Paving Co.,* 142 N. C., 539. As contended by the defendants, it is clearly set forth in the exhaustive opinion given in *Hawes v. Oakland,* 104 U. S., 450, 26 Law Ed., 827. But there *Mr. Justice Miller,* after discussing the general doctrine notes several exceptions in the following language: "We understand that doctrine to be that, to enable a stockholder in a corporation to sustain in a court of equity in his own name, a suit founded on a right of action existing in the corporation itself, and in which the corporation itself is the appropriate plaintiff, there must exist as the foundation of the suit:

"Some action or threatened action of the managing board of directors or trustees of the corporation, which is beyond the authority conferred on them by their charter or other source of organization;

"Or such a fraudulent transaction, completed or contemplated by the acting managers, in connection with some other party, or among themselves, or with other shareholders as will result in serious injury to the corporation, or the interests of the other shareholders;

"Or where the board of directors, or a majority of them, are acting for their own interest, in a manner destructive of the corporation itself, or of the rights of the other shareholders;

"Or where the majority of shareholders themselves are oppressively and illegally pursuing a course in the name of the corporation, which is in violation of the rights of the other shareholders, and which can only be restrained by the aid of a court of equity.

"Possibly other cases may arise in which, to prevent irremediable injury, or a total failure of justice, the Court would be justified in exercising its powers, but the foregoing may be regarded as an outline of the principles which govern this class of cases."

This general statement may be deemed broad enough to cover a pertinent exception noted by Cook: "So, also, in the state courts there are occasions when the allegation that the stockholder has requested the directors to bring suit and they have refused may be omitted, since the request itself is not required. This occurs when the

corporate management is under the control of the guilty parties. No request need then be made or alleged since the guilty parties would not comply with the request; and even if they did the court would not allow them to conduct the suit against themselves." Cook on Corporations, sec. 741. *Loomis v. Railroad,* 165 Mo., 469; *Oklahoma Co. v. Hastings,* 194 Pac., 223; *Von Arnim v. Am. Tubeworks,* 188 Mass., 515; *Sheeby v. Barry,* 89 At. (Conn.), 259.

We must not close our eyes to the fact that, as the exceptions noted in the *Hawes case* are disjunctive, the complaint must be sustained if it asserts a cause of action under either head; or to the additional fact that, as the demurrers admit relevant allegations and relevant inferences deducible therefrom, the complaint must be interpreted in the light most favorable to the plaintiffs. It therefore becomes necessary to determine whether the plaintiffs have substantially charged that the acts of the city council were *ultra vires* or indicative of the pursuit or the intention to pursue an illegal course of conduct in the name of the city in violation of the rights of the plaintiffs and other taxpayers. The complaint, it will be seen, does not charge the defendants with corruption or moral turpitude; and, indeed, this is not essential to the action. *Jones v. North Wilkesboro,* 150 N. C., 647. Constructive fraud need not originate in any actual evil design. It is sufficient in a court of equity to allege acts, omissions, or concealments which involve a breach of legal or equitable duty, trust, or confidence and tend to the injury of another or to the bringing about of an undue and unconscientious advantage. Story's Eq. Jurisprudence (Red. Ed., secs. 187, 258.)

It is provided in C. S., 2830 that no contract for construction work shall be awarded unless proposals therefor shall have been invited by advertisement once in at least one newspaper of general circulation in the city, the publication to be at least one week before the time specified for the opening of the proposals. Accepting the advertisement in question as a technical compliance with the statute we must consider the allegations concerning the subsequent conduct of the city council. It is alleged that instead of acting upon the proposals when they were opened, the council, for the purpose of devising a scheme for accepting the bid of the Murray Company and disregarding the bid of Lassiter & Co., postponed final disposition of the matter for nearly a week, meanwhile permitting the Murray Company to put in a new and secret bid, which was neither submitted nor opened in accordance with the law; and, moreover, that the city council secretly accepted a bid which contravened the interest of the plaintiffs and other taxpayers and wrongfully and unlawfully awarded the contract to the Murray Company. These admitted allegations are sufficient

prima facie to prevent a dismissal of the action, for they assert in effect a breach of trust, the failure to perform a public duty, a concealed purpose and a devised scheme to injure Lassiter & Co., to give undue advantage to the Murray Company and to wrong the plaintiffs. In any event, the council's good faith is directly assailed. *Edwards v. Berlin,* 56 Pac. (Cal.), 432; *Clark v. Comrs.,* 11 Neb., 484; *Chicago v. Mohr,* 216 Ill., 320; *Lumber Co. v. Mayor,* 99 So. (La.), 687; 2 Dillon on Municipal Corporations, sec. 811, p. 1224.

In the next place, it is alleged and admitted by the demurrers that after the bids were opened and before the contract was awarded a committee of three was appointed to determine the award under an agreement that the members of the council would let the contract as the committee should recommend. In substance this is an allegation that the councilmen attempted to abdicate their trust by a delegation of their authority. That they were acting in a fiduciary capacity seems not to have been controverted. "The principle is a plain one," says Dillon, "that the public powers or trusts devolved by law or charter upon the council or governing body, to be exercised by it when and in such manner as it shall judge best, cannot be delegated to others." Sec. 244. This principle may not prevent the delegation of duties which are ministerial; but here the trust committed to the city council involved the exercise of functions which partake of a judicial character and may not be delegated. 2 Dillon on Mun. Corp., sec. 811. Hence, we conclude that the complaint states a cause of action and that it was not necessary for the plaintiffs first to apply to the city or its council, or before bringing suit to make a formal demand, for the relief they now seek. While it is alleged the city is a municipal corporation the charter is not made a part of the complaint; and the "speaking" element of the demurrer is not to be considered. *Sandlin v. Wilmington,* 185 N. C., 257.

The judgment must be reversed and both the demurrers overruled.

Reversed.