JOHN SPRUNT HILL v. ERWIN MILLS, INC.; W. H. RUFFIN, President; CARL HARRIS, Vice-President; RALPH MARSHALL, Vice-President and Treasurer; E. W. DUNHAM, Secretary.

(Filed 24 February, 1954.)

1. **Corporations § 10—Minority stockholder held entitled to maintain this action without alleging demand and refusal.**

   In an action by a minority stockholder and director against the corporation and its officers attacking a proposed contract of the corporation as contrary to its interests, allegation of demand upon and refusal of the corporation to bring the suit is not necessary when it is alleged that the corporation was under control of a group of stockholders who intended to have the corporation execute the contract for the benefit of another corporation in which they were interested, pursuant to a conspiracy, and that the plaintiff had opposed the contract within the structure of the corporation by all legal means within his power.

2. **Corporations § 8—**

   While minority stockholders do not have the right to dictate the corporation's policies, they are required to submit to the will of the majority only so long as the majority act in good faith and within the limitation of the law.

3. **Same—**

   Majority stockholders have a fiduciary relationship to the minority stockholders, and are under duty in their control of the management to exercise good faith, care and diligence, and to protect the interest of the minority stockholders.

**4. Pleadings § 15—**

A demurrer admits the truth of the allegations of fact contained in the pleading for the purpose of testing the sufficiency of the complaint.

**5. Corporations §§ 6a, 10—Complaint held sufficient to state cause of action attacking contract proposed by majority stockholders of corporation.**

In an action by a minority stockholder and director against the corporation and its officers, allegations to the effect that a majority of the stockholders of the corporation also had controlling interest in another corporation, that pursuant to a conspiracy, the majority stockholders, through their control of the management of defendant corporation, intended to have it execute a contract with such other corporation, that the contract would be detrimental to the interest of defendant corporation and its minority stockholders and would be to the benefit of such other corporation, *is held* to state a cause of action as against demurrer. Plaintiff would be entitled to attack the contract for unfairness, even though it were fully executed.

**6. Same—**

Where minority stockholders assert that the majority stockholders were controlling the corporation for their personal gain and to the detriment of the corporation, the burden is upon the majority stockholders to prove their good faith and show that their conduct is inherently fair from the viewpoint of the corporation and those interested therein.

**7. Same: Injunctions § 8—**

Upon the findings of fact made by the lower court in this case, the order dissolving the temporary order restraining defendant corporation and its officers and agents from executing the proposed contract of the corporation, is affirmed.

**8. Same—**

The court's ruling upon whether a temporary restraining order issued in the cause should be continued to the hearing has no bearing whatever on the rights of the parties when the action is tried on its merits.

ERVIN and BOBBITT, JJ., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Burgwyn, Emergency Judge,* August Term, 1953, of DURHAM.

This action was instituted by the plaintiff to enjoin the execution by Erwin Mills, Inc., of a five-year exclusive factoring and sales contract with Woodward, Baldwin & Company, Inc., a textile sales agency, 43-45 Worth Street, New York, N. Y., hereinafter called Woodward.

The allegations of the complaint or the substance thereof essential to a disposition of this appeal are as follows:

1. The plaintiff is a citizen and resident of the State of North Carolina, residing in the City of Durham, and is a stockholder and director of the corporate defendant; that at the present time he owns 73,000 shares of common stock in the said corporation.

2. That the corporate defendant is a corporation organized and existing under the laws of North Carolina with its principal place of business in the City of Durham, Durham County, North Carolina; that the individual defendants are officers of Erwin Mills, Inc., as designated in the caption of this action, all of whom are citizens of North Carolina and reside in the City of Durham, except Ralph Marshall, who resides in Chapel Hill, in Orange County.

3. That Erwin Mills, Inc., has issued and outstanding 1,084,290 shares of common capital stock; that the "working" or "managing" control of the corporate defendant is vested in a group of stockholders, officers, and directors, hereinafter designated as the "Abney Group."

4. That The Abney Mills is a South Carolina corporation, operating a group of mills located in South Carolina and other places; that the "working" or "managing" control of The Abney Mills is vested in Mrs. J. P. Abney, Jack Abney, F. E. Grier, and other J. P. Abney family interests; that The Abney Mills interest owns and controls 3,802 shares of the total of 7,952 shares of common stock of Woodward, has interlocking directors, and provides ninety-five per cent of all the sales of Woodward, thereby being in "working" or "managing" control of said textile sales agency.

5. "Plaintiff is advised and believes and upon such information and belief therefore alleges that unless restrained and enjoined from so doing, the corporate defendant, pursuant to a combination, plan, scheme, and conspiracy of the 'Abney Group' and in collaboration with some of the officers and directors . . . (of the defendant corporation), will, in the exercise of bad faith, and without due care and diligence, enter into a Sales Agency and Stock Purchase Agreement with Woodward, Baldwin and Co., Inc., which agreement is and will be highly prejudicial and contrary to the best interests of the Erwin Mills, Inc., and of the minority of stock of Erwin Mills, Inc., in breach of the fiduciary and trustee relationship existing between said 'Abney Group' and the officers of said Erwin Mills, Inc., on the one hand, and the minority stockholders of Erwin Mills, Inc., on the other hand; that such action will result in irreparable damage to Erwin Mills, Inc., and to plaintiff and other minority stockholders; that said agreements will unjustly oppress the minority of the stockholders and greatly impair and destroy or sacrifice profits of the corporation, resulting in reduction of dividends and of the market value of holdings of the minority of the stockholders; that the plaintiff is without adequate remedy at law to prevent such action."

6. Copy of the proposed sales agreement to be executed with Woodward is attached to the complaint and asked to be taken as a part of the complaint as if fully set out therein. Likewise, a copy of a proposed sales agreement with Joshua L. Baily & Company, Inc., hereinafter called

Baily, is also attached to the complaint and marked Exhibit B and asked to be taken as a part of the complaint as if fully set out therein.

7. It is alleged that "instead of continuing to do the business of merchandising through the sales agency of Joshua L. Baily & Company, Inc., which for 57 years has acted as sales agent for Erwin Mills, Inc., . . . plaintiff is informed and believes and therefore alleges that the 'Abney Group,' following the plan, scheme, combination, and conspiracy referred to in VI above (paragraph 5 herein), and as a move to accomplish the same, will force the execution by Erwin Mills, Inc., of the Sales Agency Agreement 'Exhibit A,' and Stock Purchase Agreement to purchase approximately 3,802 shares of the common stock of Woodward, Baldwin & Company, Inc., its controlled subsidiary, which said contracts are not in the best interest of Erwin Mills, Inc., or of the owners of the minority stock of said Erwin Mills, Inc." It is alleged that in addition to the proven ability, experience and greater financial stability of Baily over Woodward, that the contract offered by Baily, if accepted, will make available to Erwin Mills, Inc., its sales services at an annual cost of several hundred thousand dollars less than it will cost the corporate defendant to sell its products under the terms offered in the proposed contract of Woodward; and the plaintiff further alleges that if the proposed sales agency contract is executed with Woodward it will result in a diversion of profits from Erwin Mills, Inc., to Woodward for the benefit of that company and its stockholders, including some of the defendants.

8. That plaintiff, as director, at directors' meetings, has opposed the approval and execution of the proposed agreement with Woodward, and continues to do so; "that unless enjoined and restrained by the court, plaintiff is advised and believes that the 'Abney Group' will force, coerce, and require that the corporate defendant, acting through the individual defendants, or some of them, to enter into and execute the said agreements; that plaintiff has appealed to the 'Abney Group' not to take this course of action and has opposed it within the structure of the corporation to a greater extent than permitted of him as a stockholder of a minority interest in said corporation and has found no redress; that he is powerless, without court action, to prevent the 'Abney Group' from forcing Erwin Mills, Inc., into said agreements with Woodward, Baldwin & Company, Inc.; that plaintiff's remedy at law is inadequate and he will be irreparably damaged unless the defendants are restrained and enjoined from executing the proposed agreements."

The plaintiff obtained from his Honor, Leo Carr, Resident Judge of the Tenth Judicial District, a temporary restraining order on 24 July, 1953, enjoining the defendant corporation and individuals from entering into the proposed sales agreement with Woodward, and from purchasing any shares of the common stock of Woodward; and ordered the defendants

to appear before said judge (place not stated), on 3 August, 1953, at 11:00 a.m., and show cause why the order should not be continued until the final hearing.

This matter was continued from 3 August, 1953, until 9:30 a.m., Wednesday, 19 August, 1953, and was heard by his Honor, W. H. S. Burgwyn, Judge Presiding at the Special Civil Term in the Superior Court of Durham County. The oral testimony offered by the plaintiff and the defendants, together with the affidavits and exhibits offered in support of the respective contentions of the parties, cover several hundred pages of the record. It appears from the record that on 28 July, 1953, despite the objections of the plaintiff and three other directors, the Board of Directors of the Erwin Mills, Inc., by vote of six to four, adopted a resolution authorizing and directing the president and secretary of the company to execute the proposed sales contract with Woodward.

After hearing the evidence and argument of counsel, the court made the following findings of fact: "That the actions of the defendants, and of the Board of Directors of the defendant corporation, in respect to the matters complained of in the complaint were had and taken in good faith and in the exercise of the best judgment of the Directors, and the court finds the evidence fails to disclose any bad faith, fraud, oppression, duress, coercion or conspiracy on the part of the defendants or any of the Directors of the defendant corporation, or any other persons or corporations referred to in the complaint."

And the court being of the opinion it should not undertake to exercise its judgment and discretion with respect to the agreements under consideration, ordered that the temporary restraining order theretofore issued should be dissolved, and entered judgment accordingly. It was agreed by the defendants and incorporated in the judgment that pending appeal to the Supreme Court of North Carolina, the defendant corporation, its officers and directors, will not execute the proposed contract between Erwin Mills, Inc., and Woodward. From the judgment entered the plaintiff appeals, assigning error.

*John T. Manning and Joyner & Howison for plaintiff, appellant.*

*Reade, Fuller, Newsom & Graham and Brooks, McLendon, Brim & Holderness for defendants, appellees.*

DENNY, J. The defendants and each of them interposed a demurrer in this Court to the plaintiff's complaint on the ground that it does not state facts sufficient to constitute a cause of action; for that (1) the plaintiff is not entitled to maintain in his own right an action to restrain a threatened loss not peculiar to himself without allegation that he exhausted his remedies within the corporation before resorting to suit; (2) the plaintiff

is not entitled to obtain the intervention of the court to impose his own judgment in a matter reserved to the discretion and judgment of the officers and board of directors of the corporation; and (3) the plaintiff is not entitled to equitable relief where he has an adequate remedy at law. He must allege facts as to such inadequacy.

This Court, in the case of *Murphy v. Greensboro,* 190 N.C. 268, 129 S.E. 614, said: "When a person becomes a stockholder in a corporation he assents to the execution of all the powers which the law confers upon the corporation and agrees to abide by the action of the governing body as to all matters properly under its control. For this reason before bringing suit against the corporation to protect its rights or to redress its wrongs he must ordinarily seek remedial action through the directorate or the other controlling authorities of the corporation itself." See 13 Am. Jur., Corporations, section 422, page 474, *et seq.,* and cited cases. But there are exceptions to the general rule with respect to such actions. The Supreme Court of the United States in the case of *Hawes v. Oakland,* 104 U.S. 450, 26 L. Ed. 827, pointed out a number of exceptions to the rule requiring demand and refusal. The Court said: "We understand that doctrine to be that, to enable a stockholder in a corporation to sustain in a court of equity in his own name, a suit founded on a right of action existing in the corporation itself, and in which the corporation itself is the appropriate plaintiff, there must exist as the foundation of the suit:

". . . Such a fraudulent transaction, completed or contemplated by the acting managers, in connection with some other party, or among themselves, or with other shareholders as will result in serious injury to the corporation, or to the interests of the other shareholders;

"Or where the board of directors, or a majority of them are acting for their own interest, in a manner destructive of the corporation itself, or of the rights of the other shareholders;

"Or where the majority of shareholders themselves are oppressively and illegally pursuing a course in the name of the corporation, which is in violation of the rights of the other shareholders, and which can only be restrained by the aid of a court of equity."

The Court, in the above case, also pointed out that in addition to the grievances which warrant an action by a stockholder, the stockholder should show "to the satisfaction of the court, that he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances or action in conformity to his wishes." Certainly, the plaintiff alleges sufficient facts in his complaint to meet this requirement.

Moreover, this Court, in discussing the identical question now before us, in *Murphy v. Greensboro, supra,* quoted with approval from Cook on Corporations, section 741, page 3250, the following statement: "So also in the state courts there are occasions when the allegation that the stock-

holder has requested the directors to bring suit and they have refused may be omitted, since the request itself is not required. This occurs when the corporate management is under the control of the guilty parties. No request need then be made or alleged, since the guilty parties would not comply with the request; and even if they did the court would not allow them to conduct the suit against themselves." Therefore, when it appears that the control of a corporation is in the directors, or a group of stockholders, whose actions are questioned, and that a minority stockholder has exhausted all the means available to him, within the corporation itself, to obtain a redress of his grievances, a demand that the corporation bring an action for such relief is not required. In such a suit, a stockholder may prosecute the action without alleging demand and refusal. *Murphy v. Greensboro, supra; Cannon v. Wiscassett Mills,* 195 N.C. 119, 141 S.E. 344; *Hawes v. Oakland, supra; Jones v. Van Heusen Charles Co.,* 246 N.Y.S. 204; *Tarlow v. Archbell,* 47 N.Y.S. 2d 3; *Collier v. Mayflower Apartments,* 196 Ga. 419, 26 S.E. 2d 731; *Caldwell v. Eubanks,* 326 Mo. 185, 30 S.W. 2d 976, 72 A.L.R. 621; *Schmidt v. Schmidt* (Civ. App. of Texas), 52 S.W. 2d 778.

Minority stockholders do not have the right to dictate corporate policies. However, they are required to submit to the will of the majority only so long as the majority act in good faith and within the limitation of the law. 13 Am. Jur., Corporations, section 422, page 474, *et seq.*

The rights and powers vested in those holding a majority of the capital stock in a corporation imposes on them a fiduciary relationship as between them and the minority stockholders. It is the duty of the management of a corporation to exercise good faith, care, and diligence, to make the property of the corporation produce the largest possible amount, to protect the interest of the minority stockholders, and to secure and pay over to them their just proportion of the corporate income.

"It is well established that courts of equity will entertain jurisdiction, at the instance of minority stockholders of a private corporation who are unable to obtain redress within the corporation and have no adequate remedy at law, to restrain threatened *ultra vires* acts on the part of the majority or to prevent any other act on the part of the majority which may be denominated as a breach of trust or a breach of the fiduciary duties owing to the minority." 13 Am. Jur., Corporations, section 423, page 475, *et seq.*

The plaintiff alleges in sum and substance that the proposed contract with Woodward (which the directors of the defendant corporation have approved and directed its president and secretary to execute with Woodward since the institution of this action), will result in irreparable injury and damage to the corporate defendant and to the plaintiff and other minority stockholders. The plaintiff not only alleges in detail the facts

which he contends will result in the alleged irreparable injury and damage to the corporate defendant and to the plaintiff and other minority stockholders, but alleges that the execution of the contract with Woodward will be to the financial advantage of Woodward and certain majority stockholders, including some of the individual defendants. These allegations are admitted for the purpose of testing the sufficiency of the plaintiff's complaint.

It is the general rule that when the fairness of transactions between a corporation and one dominating its policies is challenged, the burden is upon those who would maintain such transactions to show their inherent fairness to all parties concerned. Fletcher Cyclopedia Corporations, Section 918, page 341, *et seq.* This question was considered in *Mayflower Hotel Stockholders Protective Committee v. Mayflower Hotel Corp.,* 193 F. 2d 666, where the propriety of a proposed contract placing the management of the Mayflower Hotel in the hands of the Hilton chain for a period of five years was questioned. The control of the Mayflower corporation had been obtained by the Hilton Hotel chain, just as the "Abney Group" has control of the corporate defendant. Among other things, the Court said: "Nevertheless the fact is, as recognized by the trial judge, that Hilton, which was then the majority stockholder of Mayflower, sat on both sides of the table for all practical purposes. While this does not render the contract illegal *per se* it brings it under careful scrutiny. . . . The burden is upon such a stockholder, as it is upon the director, to prove not only the 'good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein.'" See also, *Mayflower Hotel Stockholders Protective Committee v. Mayflower Hotel Corporation,* 173 F. 2d 416.

In *Pepper v. Litton,* 308 U.S. 295, 84 L. Ed. 281, the Court said: "A director is a fiduciary. . . . So is a dominant or controlling stockholder or group of stockholders. . . . Their powers are powers in trust. . . . Their dealings with the corporation are subjected to rigorous scrutiny and where any of their contracts or engagements with the corporation is challenged the burden is on the directors or stockholders not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein. . . . The essence of the test is whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain. If it does not, equity will set it aside."

It is likewise said in 18 C.J.S., Corporations, section 490, page 1166, that, "There is no law which makes it impossible for a majority stockholder to enter into a contract with his company. However, such a contract will be scrutinized with much greater care than if made with a third person, and where it is unfair or unconscionable a court of equity will

interpose at the instance of the corporation or the minority stockholders to prevent it from being used oppressively and in violation of the rights of the minority; . . . Minority stockholders are not precluded from attacking the contract as fraudulent by the fact that it is completely executed . . . A corporation which, through stock ownership, controls and conducts the business of another is held to the strictest account and to the observance of the highest rectitude in a transaction with its subsidiary, and has the burden of proving its fairness. The validity of a transaction may be tested by considering whether or not the proposition submitted to the subsidiary would have commended itself to an independent corporation."

We cite the above authorities for the purpose of showing the right to maintain an action of this character and not for the purpose of prejudging or in anywise expressing an opinion on the merits of the present controversy. We hold, however, that the allegations of the complaint are sufficient to withstand the demurrer interposed by the defendants.

The sole remaining question for disposition is whether the court below committed error in dissolving the temporary restraining order theretofore issued in this cause.

This Court has discussed the law so many times and so recently in *Lance v. Cogdill,* 238 N.C. 500, 78 S.E. 2d 319, and in *Huskins v. Hospital,* 238 N.C. 357, 78 S.E. 2d 116, as to when a temporary restraining order should or should not be issued, as well as when such order should be continued to the final hearing, we deem it unnecessary to discuss the subject here. See *Tobacco Growers' Ass'n. v. Harvey & Son Co.,* 189 N.C. 494, 127 S.E. 545, 47 A.L.R. 928; *Hurwitz v. Sand Co.,* 189 N.C. 1, 126 S.E. 171; *Tobacco Growers' Ass'n. v. Bland,* 187 N.C. 356, 121 S.E. 636; *Cobb v. Clegg,* 137 N.C. 153, 49 S.E. 80; *Lewis v. Lumber Co.,* 99 N.C. 11, 5 S.E. 19; *Perry v. Michaux,* 79 N.C. 94; *McCorkle v. Brem,* 76 N.C. 407; *James v. Lemly,* 37 N.C. 278.

In light of the findings of the court below, we have concluded that the evidence on this record will not warrant a reversal of his Honor's ruling.

Even so, our ruling here on this question or the action of the court below in dissolving the temporary restraining order previously issued in the cause, will have no bearing whatever on the rights of the parties when the action is tried on its merits. *Lance v. Cogdill, supra; Huskins v. Hospital, supra.*

The demurrer is overruled, and the order entered in the court below dissolving the temporary restraining order is

Affirmed.

ERVIN and BOBBITT, JJ., took no part in the consideration or decision of this case.